UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NAPOLEON CHERRY,

             **Plaintiff,**

  -against-

HILLSIDE MANOR REHABILITATION &           <u>OPINION AND ORDER</u>
EXTENDED CARE; DR. SARFRAZ AW; MARY       06-CV-3296 (NG)
IMMACULATE HOSPITAL,

             **Defendants**.

-------------------------------------------------------------X

**GERSHON, United States District Judge.**

In the present action, construing the *pro se* claims broadly, Mr. Cherry alleges (1) medical malpractice and wrongful death based on defendants' mistreatment of Mr. Cherry's uncle and (2) racial discrimination and violation of Mr. Cherry's healthcare proxy rights based on defendants' alleged failure to contact Mr. Cherry or disclose information about his uncle's health care. Defendants Hillside Manor Rehabilitation & Extended Care ("Hillside Manor") and Mary Immaculate Hospital move for judgment on the pleadings pursuant to Rule 12 of the Federal Rules of Civil Procedure, arguing that this court lacks subject matter jurisdiction over Mr. Cherry's complaint and that the complaint fails to state a claim upon which relief may be granted. Plaintiff has not responded to defendants' motions. For the reasons stated below, the motions submitted by Defendant Hillside Manor and Defendant Mary Immaculate Hospital are granted.

1

## BACKGROUND

On July 6, 2006, Mr. Cherry filed a one-page complaint that contains two allegations, which state in their entirety: "Disregarded me because of race in handling Mr. Garner's Health Care Proxy" and "Medical Malpractice of Benjamin Garner's Death." Although it alleged no specific facts, the complaint demanded $1,000,000 in compensation. Attached to Mr. Cherry's complaint is a health care proxy form that his uncle, Benjamin Garner, signed and dated on August 25, 2005; this health care proxy form appointed Mr. Cherry as Mr. Garner's "health care agent to make any and all health care decisions for me . . . if I become unable to render my own health care decisions." In addition, Mr. Cherry attached to his complaint a hospital admitting form from Hillside Manor and a death certificate for Mr. Garner dated November 17, 2005.

Because plaintiff's complaint fell "far short of giving fair notice of the claim as required by Rule 8(a)(2)," the court granted plaintiff leave to amend his complaint to set forth the legal basis and factual allegations to support his claims and the relief he is seeking. *See* Order of September 14, 2006. On September 28, 2006, Mr. Cherry filed a one-page amended complaint alleging that Hillside Manor "disregarded me because of my race in handling Mr. Benjamin Garner, my uncles Health Care Proxy, when I, Napoleon Cherry, were to speak and represent him in event he became Brain Dead, which he did become after his fall in Hillside Manor Nursing before his death on November 17, 2005." Mr. Cherry further alleges that Hillside Manor refused to give him any information about his uncle after his fall or disclose his whereabouts. He seeks $100,000 in damages. Other than the caption, Mr. Cherry's amended complaint does not mention Mary Immaculate Hospital or Dr. Sarfraz Aw.

During a November 28, 2006 initial conference at which Mr. Cherry, Hillside Manor, and Mary Immaculate Hospital appeared, Magistrate Judge Lois Bloom attempted to clarify the basis of Mr. Cherry's allegations and inquired into the bases for defendants' motions. When describing the circumstances underlying his claims, Mr. Cherry stated that his uncle, Mr. Garner, chose Mr. Cherry as his health care proxy instead of Mr. Garner's daughter and granddaughter because "they had already abandoned [Mr. Garner]." Transcript of November 28, 2006 Initial Conference, p. 6. Mr. Cherry further represented that he had provided Hillside Manor with a copy of the health care proxy form that appointed him as Mr. Garner's health care agent, explaining that Mr. Garner did not want his daughter and granddaughter to be in charge in the event that Mr. Garner became brain dead. Mr. Cherry asserted that, despite these instructions, Hillside Manor did not notify him when Mr. Garner fell ill and refused to give him information when Mr. Garner was taken to Mary Immaculate Hospital where, according to Mr. Cherry, Mr. Garner became brain dead. Mr. Cherry further asserted that he was sure that "Hillside Manor sent [Mary Immaculate] a copy of the health care proxy" and that "Mary Immaculate should have tried to notify" him about Mr. Garner's condition. *Id.* at p.14. Although Mr. Cherry claimed that defendants "discriminated against me . . . [b]ecause I'm black," *Id.* at 8, 10, he has not claimed that people of a different color were treated differently from him.

After hearing from Mr. Cherry and the defendants, Judge Bloom set a briefing schedule for defendants' motions. Defendants were directed to serve their motions by January 16, 2007; Mr. Cherry was directed to serve his opposition by February 29, 2007; and defendants were directed to serve their reply and to file the fully briefed motion with the court by March 14, 2007. On January 15, 2007, defendants served on defendant their motion papers, along with a "Notice

to Pro Se Litigant Opposing Motion for Summary Judgment" informing Mr. Cherry that "the claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion." On March 14, 2007, defendants filed their motions with the court and, by affidavit dated March 9, 2007, represented that Mr. Cherry had failed to respond to defendants' motions and had not advised the defendants of any request for an extension of time to submit his opposition papers.

By letter dated March 28, 2007 and received April 12, 2007, Mr. Cherry represented that he had never received defendants' motion papers and requested that the court enter judgment in his favor. Defendant Hillside Manor contested Mr. Cherry's representations by letter dated April 24, 2007 and directed the court's attention to affidavits of service attached to defendants' motion papers.

On May 2, 2007, the court issued an order stating that "[p]laintiff's claim that he never received defendants' motion papers, although they were served by two different means, is difficult to accept. However, given plaintiff's *pro se* status, the Court will set a new schedule for defendants' motions in order to afford plaintiff one final opportunity to oppose these motions." Accordingly, defendants were directed to re-serve their motions by regular mail by May 11, 2007; plaintiff was directed to serve his opposition to defendants' motions by June 8, 2007; and defendants were directed to re-serve their reply and electronically file the fully briefed motion with the court by June 22, 2007. On June 22, 2007, defendants refiled their motions to dismiss with the court. Along with their motion papers, defendants submitted (1) an affidavit of service indicating that defendants had re-served their motions to dismiss on Mr. Cherry on May 9, 2007 and (2) a letter dated June 14, 2007 indicating that Mr. Cherry had not contacted defendants and

4

had not served any opposition papers. To date, the court has not received any papers in opposition to defendants' motions to dismiss. Accordingly, defendants' motions will be considered unopposed.

## DISCUSSION

Mr. Cherry has failed to establish that this court has subject matter jurisdiction over any claim that Mr. Cherry seeks to assert, either (1) on his own behalf based on the defendants' alleged racial discrimination and violation of Mr. Cherry's rights as Mr. Garner's health care proxy agent or (2) on behalf of Mr. Garner for wrongful death and alleged medical malpractice during Mr. Garner's medical treatment. Furthermore, even if subject matter jurisdiction existed, Mr. Cherry has failed to state a claim upon which relief can be granted.[1]

**I. This Court Lacks Subject Matter Jurisdiction Over Potential Claims that Mr. Cherry Asserts on His Own Behalf**

This court lacks subject matter jurisdiction over the claims that Mr. Cherry seeks to assert on his own behalf based on the defendants' alleged racial discrimination and failure to notify him or give him information about Mr. Garner. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Markarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000). In the context of a Rule 12(b)(1) motion to dismiss, it is the "plaintiff [who] bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transporation System*, 436 F.3d 635, 638 (2d Cir. 2005). Although courts must

---

[1] Hillside Manor and Mary Immaculate Hospital's motions for judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c) for lack of subject matter jurisdiction and failure to state a claim are evaluated under the same standards as motions to dismiss under Rule 12(b)(6) and 12(b)(1). *Nicholas v. Goord*, 430 F.3d 652, 658 n. 8 (2d Cir. 2005) (a motion for judgment on the pleadings . . . is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss); *United States v. New Silver Palace Rest.*, 810 F.Supp. 440, 441 (E.D.N.Y. 1992) ("A motion to dismiss for lack of subject matter jurisdiction can certainly be raised via a Rule 12(c) motion [and] . . . , [i]n deciding a motion under Rule 12 (c), the court should apply the same standard as that applicable to a motion under Rule 12(b)(1).")

make "reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training," a party's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Lehman v. Discovery Commc'ns Inc.*, 217 F.Supp.2d 342, 346-47 (E.D.N.Y. 2002) (dismissing a *pro se* plaintiff's complaint for lack of subject matter jurisdiction) *citing Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). When deciding a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true all material factual allegations in the complaint. *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Furthermore, courts "should read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest argument that they suggest." *McPherson v. Coombe*, 174 F.3d 176, 180 (2d Cir. 1999) (internal quotation marks and citations omitted). However, jurisdiction "must be shown affirmatively," *Drakos*, 140 F.3d at 131, and to establish subject matter jurisdiction, the plaintiff must either assert a claim arising under federal law, 28 U.S.C. § 1331, or meet the standard for diversity jurisdiction outlined in 28 U.S.C. §1332.

### A. With regard to claims asserted on his own behalf, plaintiff has not alleged a claim arising under federal law

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc., v. Williams*, 482 U.S. 386, 392 (1987). In the present case, Mr. Cherry asserts in his complaint that defendant Hillside Manor "disregarded [Mr. Cherry] because of [Mr. Cherry's] race" when rendering treatment to Mr. Cherry's uncle and that defendants engaged in medical malpractice. By way of clarification, Mr. Cherry stated at an initial conference before Judge Bloom that defendants Hillside Manor and Mary Immaculate Hospital did not notify him and refused to give

him information about Mr. Garner, the uncle for whom Mr. Cherry acted as health care proxy agent. However, Mr. Cherry does not identify a federal statute under which he seeks relief, nor is the court aware of an available federal statute or other source of a federal claim that could arise out of the facts alleged. Mr. Cherry cannot rely on claims of negligence or medical malpractice that arise purely under state law to establish federal question jurisdiction. Accordingly, Mr. Cherry's complaint fails to establish federal-question subject matter jurisdiction.

> **B. With regard to claims asserted on his own behalf, plaintiff has failed to allege diversity jurisdiction**

Mr. Cherry has also failed to establish subject matter jurisdiction based on diversity of citizenship. Diversity jurisdiction exists where there is a suit between citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "[D]iversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin. Corp., v. Pacificorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (internal citations and quotation marks omitted). Although his complaint indicates that the parties are diverse (he being from Pennsylvania and the defendants from New York), the bare allegations in Mr. Cherry's pleadings are insufficient to establish a reasonable probability that the amount in controversy regarding claims of injury to him personally exceeds $75,000 in this case. Moreover, even if diversity jurisdiction did exist, dismissal of Mr. Cherry's complaint is still warranted because Mr. Cherry's complaint, as discussed below, fails to state a claim upon which relief may be granted.

## II. With Regard to Claims that Mr. Cherry Seeks to Assert on His Own Behalf, Mr. Cherry Has Failed to State a Claim Upon Which Relief Can Be Granted

With regard to any claims that Mr. Cherry seeks to assert on his own behalf for racial discrimination or violation of his health care proxy rights, Mr. Cherry has failed to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, --- U.S. at ---, 127 S. Ct. at 1964-65 (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal,* 490 F.3d at 157-58 (emphasis in original). Nevertheless, a document filed *pro se* still must be "liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted), *quoting Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197 (2007) (per curiam).

### A. With regard to claims that Mr. Cherry seeks to assert on his own behalf, Mr. Cherry states no cognizable *federal* claim

In the present case, despite being granted leave to amend his complaint, Mr. Cherry does not offer even a formulaic recitation of the elements of a federal claim. Rather, as discussed earlier in Part I.A., Mr. Cherry does not identify a federal statute under which he seeks relief, nor does Mr. Cherry outline the elements of any federal statute or identify sufficient information to

permit an inference that these elements exist. Moreover, outside of the complaint's caption, Mr. Cherry's amended complaint does not even mention Mary Immaculate Hospital or Dr. Sarfraz Aw.[2] As such, with regard to the claim that Mr. Cherry seeks to assert on his own behalf based on defendants' alleged racial discrimination and failure to contact him or provide him with Mr. Garner's health care information, Mr. Cherry has failed to state a federal claim upon which relief can be granted and has failed to comply with the pleading requirements outlined in *Twombly* and Fed. R. Civ. Pro. 8.

      **B.**    **With regard to claims that Mr. Cherry seeks to assert on his own behalf, Mr. Cherry states no cognizable *state law* claim**

With regard to any claim that Mr. Cherry asserts on his own behalf for violation of his rights as Mr. Garner's health care proxy agent, Mr. Cherry fails to state a cognizable claim for damages under New York law. Although New York law provides that health care proxy agents have the right to make decisions and obtain information on behalf of the principals who appoint them as health care proxy agents, N.Y. PUB. HEALTH LAW § 2982, Mr. Cherry cannot state a claim for monetary damages based on the deprivation of this right. *See DeCintio v. Lawrence Hosp. et al.*, 299 A.D.2d 165, 166 (1st Dept. 2002) ("Plaintiff's contention that, by virtue of his standing as decedent's health care proxy, a duty of care was owed to him individually is without merit. Public Health Law article 29-C contains no provision permitting recovery by a health care proxy for his individual emotional or pecuniary damages and none may be judicially engrafted").

---

[2] Although not included in the allegations of his written complaint, Mr. Cherry stated at a November 2006 conference before this court that he was sure that "Hillside Manor sent [Mary Immaculate] a copy of the health care proxy" and that "Mary Immaculate should have tried to notify" him about Mr. Garner's condition. Transcript of November 28, 2006 Initial Conference, p.14. Even if the amended complaint were deemed amended to add these facts, it does not state a federal claim.

### III. This Court Lacks Subject Matter Jurisdiction Over Potential Claims that Mr. Cherry Seeks to Assert on Behalf of His Uncle's Estate

As with the potential claims that Mr. Cherry seeks to assert on his own behalf, Mr. Cherry has failed to establish that this court has subject matter jurisdiction over any state law claim for medical malpractice or wrongful death that he seeks to assert on behalf of his uncle.

With regard to his potential state law claims of medical malpractice and wrongful death, Mr. Cherry's complaint fails to establish that this court has subject matter jurisdiction based on diversity of citizenship. In his initial complaint, Mr. Cherry lists addresses for each of the parties, associating himself with a Pennsylvania address and associating each of the defendants with a New York address. However, to the extent that Mr. Cherry seeks to assert wrongful death and medical malpractice claims on behalf of his uncle's estate and heirs, Mr. Cherry is deemed to be a citizen of the same state as his uncle, and documents attached to Mr. Cherry's complaint list his uncle's address as Jamaica, New York. 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same state as the decedent . . ."). Accordingly, because Mr. Cherry's uncle and the defendants are all listed as citizens of New York, Mr. Cherry has failed to establish that diversity jurisdiction exists with regard to any claim that Mr. Cherry asserts on behalf of his uncle's estate and heirs.

### IV. With Regard to the Claims that He Seeks to Assert on His Uncle's Behalf, Mr. Cherry Lacks Capacity to Sue

Even if this court had subject matter jurisdiction over the potential claims for medical malpractice and wrongful death that Mr. Cherry seeks to assert on his uncle's behalf, Mr. Cherry fails to establish that he has legal capacity to assert those claims. For individuals who are acting in a representative capacity, capacity to sue is determined "by the law of the state where the court

is located . . ." Fed. R. Civ. Pro. 17(b). Under New York law, "[t]he personal representative . . . of a decedent . . . may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts § 5-4.1. A person qualifies as a "personal representative" when he has received Letters of Administration or Letters Testamentary to administer the estate of a decedent. N.Y. Est. Powers & Trusts § 1-2.13. A person who undertakes to settle the estate of the decedent without the formality of court administration is known as a "voluntary administrator" and does not have the power to enforce a claim for the wrongful death or personal injuries of a decedent. N.Y. Surr. Ct. Proc. Act §§ 1301, 1306; *see Goldberg v. Camp Mikan-Recro*, 42 N.Y.2d 1029 (1977) (noting that plaintiff, before being appointed decedent's personal representative, had no capacity to assert claims for decedent's wrongful death and personal injuries); *George v. Mt. Sinai Hospital*, 47 N.Y.2d 170, 177-79 (1979) (noting that dismissal is the appropriate remedy when someone other than the decedent's personal representative brings a medical malpractice claim based on decedent's injuries). Mr. Cherry has failed to plead that he is the "personal representative" of his uncle's estate and therefore has failed to establish that he has legal capacity to assert claims for medical malpractice or wrongful death on his uncle's behalf.

V.   **Mr. Cherry's Complaint Against Defendant Dr. Sarfraz Aw**

The docket sheet reflects an absence of service on Dr. Aw. And, apart from the complaint's caption, Mr. Cherry's amended complaint fails to mention Dr. Aw or allege any misconduct on Dr. Aw's part. Assuming that the claims parallel those against the moving defendants, Mr. Cherry's claims against Dr. Aw will also be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Mr. Cherry's claims against defendants Hillside Manor, Mary Immaculate Hospital, and Dr. Sarfraz Aw are dismissed. The Clerk of Court is directed to enter judgment accordingly.

                                              **SO ORDERED.**

                                              _____/s/_____
                                              **NINA GERSHON**
                                              **United States District Judge**

**Dated:  Brooklyn, New York**
        **June 20, 2008**